UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

XAVIER PRIESTER,

    Plaintiff,

v.                                                   Case No. 23-10490

YAPP USA AUTOMOTIVE            Sean F. Cox
SYSTEMS, INC.,                       United States District Court Judge

    Defendant.
_____/

**OPINION & ORDER
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff is a man who sought employment with the defendant company and was not hired. Thereafter, he filed this action, asserting failure-to-accommodate claims, and other claims, under the Americans with Disabilities Act ("ADA") and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"). Discovery has closed and the matter is before the Court on Defendant's Motion for Summary Judgment. The parties have briefed the issues, including supplemental briefing ordered by the Court. The Court concludes that oral argument is not necessary.

For the reasons that follow, the Court GRANTS THE MOTION IN PART AND DENIES IT IN PART. The Court DENIES Defendant's challenges to Plaintiff's failure-to-accommodate claim under the ADA. The Court GRANTS summary judgment in favor of Defendant as to Plaintiff's failure-to-accommodate claim under Michigan's PWDCRA because Plaintiff did not request an accommodation in writing, as that act expressly requires.

1

## BACKGROUND

Plaintiff Xavier Priester filed this action against Defendant YAPP USA Automotive Systems, Inc. ("YAPP") on February 28, 2023. The action was filed in federal court based upon federal-question jurisdiction over Plaintiff's ADA claim. Plaintiff asks the Court to exercise supplemental jurisdiction over his state-law claims.

Plaintiff's First Amended Complaint (ECF No. 26) is the operative complaint and it asserts the following two counts: 1) "Violation of 42 U.S.C. § 12101, *et seq*., of the Americans with Disabilities Act – Discrimination, Failure to Hire, and/or Failure to Accommodate" (Count I); 2) "Violation of M.C.L. § 37.1101, *et seq*., the Michigan Persons with Disabilities Civil Rights Act – Discrimination and Failure to Hire" (Count II).

After the close of discovery, Defendant filed the instant summary judgment motion. This Court's practice guidelines provide, consistent with Fed. R. Civ. P. 56 (c) and (e), that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .
>
> b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Scheduling Order at 2-3).

In support of its motion, Defendant filed "Defendant's Statement of Uncontested Facts"

("Def.'s Stmt."). Plaintiff then filed his "Counter-Statement of Disputed Facts" (Pl.'s Stmt.).

The relevant evidence submitted by the parties, *viewed in the light most favorable to Plaintiff*, is as follows.

YAPP is a Tier 1 automotive supplier specializing in design, engineering, and manufacturing of automotive fuel system solutions with facilities in Tennessee and Michigan. (Stmts. at ¶ 1). YAPP employs workers in several different positions.

"Production Operators" work directly on the assembly lines, building the fuel tanks that YAPP produces. (Stmts. at ¶ 10). The job position at YAPP that involves driving or operating a hi-lo/forklift is called a "Material Handler." (Stmts. at ¶ 16).

The Job Description for a Material Handler includes, among the essential functions of the job, in addition to operation of a hi-lo, performing "physical tasks to transport or store materials within the production area." (Def.'s Ex. 13, ECF No. 37-14). It includes, among the "Physical Demands" of the position, that the "employee must occasionally lift and/or move up to 50 pounds. . . While performing the duties of this job, the employee is regularly required to stand; walk; use hands to grasp small items, handle, or feel. The employee is occasionally required to sit; reach with hands and arms; and climb and balance."

YAPP's human resources representative Monica Malina-Tomov testified that she is familiar with the job description for a Material Handler and testified as follows:

> Q. Do you know what the material handlers do?
> A. Yes.
> Q. What do they do? What's your understanding of what they do?
> . . . .
> A. Operating a hi-lo safely and properly, getting on and off the hi-lo, as well as performing duties on the line, opening boxes, getting on and off the hi-lo safely, moving pallets, twisting, bending, stooping, replacing parts that the line uses.

3

> . . . .
> Q. . . . Do you remember the company having ads posted for material handlers in September of 2020?
> A. We did not.

(Tomov Dep. at 13 & 33).

YAPP's Plaint Manager Jason Thomason has an extensive career history nearly entirely related to training and certifying forklift operators. (Stmts. at ¶ 25). As Plant Manager, Thomason certified and trained forklift operators at the facility. (Stmts. at ¶ 26).

In addition, during the time period at issue, Arron Howard was employed by YAPP as a Team Lead, a position that entailed managing Material Handlers and conducting testing and hiring of same. (Howard Dep. at 8).

Plaintiff was shot in his right leg when he was about thirteen years old, requiring surgery. (Pl.'s Dep. at 16). Beginning in 2014 or 2015, Plaintiff became certified as a hi-lo / forklift operator and then began working in jobs that involved operating a hi-lo. (Pl.'s Dep. at 7-11 & 20-21).

Plaintiff was employed by JAC Products from early 2017 until May 15, 2017. (Pl.'s Dep. at 21). That job as a "Hi-Lo Driver/Materials Handler" involved operating a hi-lo. (*Id.*; ECF No 37-5 at PageID.428).

On July 4, 2018, Plaintiff was shot in the back and sustained nerve damage. (Pl.'s Dep. at 11). After being discharged from the hospital, Plaintiff "was on a walker at first," and then had a brace on each leg. Plaintiff received physical therapy, that he continues to receive today. (Pl.'s Dep. at 12). Plaintiff testified as follows:

> Q. What types of issues do you experience today as a result of your injury?
> A. I have nerve damage, so I have pain in my left foot all the time, and my back will get tight sometimes, but other than that . . .

4

> Q. Are you able to walk?
> A. With my crutches, or crutch, either two or one.
> Q. Only with crutches --
> A. Yes.
> Q. Does it limit the amount of time you can stand?
> A. Yes.

(Pl.'s Dep. at 13). Plaintiff testified that he can stand 10 or 20 minutes without a problem and can lift ten pounds. (*Id*. at 13-14). Plaintiff testified that he was unable to work for about a year after his injury. (Pl.'s Dep. at 27).

Plaintiff's first job after his injury was as a "Material Handler" for Bay Logistics. (*Id*. at 28; *see also* ECF No. 37-5 at PageID.429). Plaintiff testified that, in that job, he was "exclusively on the hi-lo." (Pl.'s Dep. at 28). Plaintiff was later in need of another job.

Plaintiff testified that he learned of an open position at YAPP through his friend, Steven Odom, who worked there:

> Q. And how did you become aware of this position?
> A. A friend of mine that works there posted it on Facebook that they were looking for hi-lo drivers at his job.
> Q. Who is your friend?
> A. Steven Odom

(Pl.'s Dep.at 39).

In September of 2020, Plaintiff contacted Steven Odom, his friend who worked as a YAPP Materials Team Lead, to see whether Odom would find him a "hi-lo job" at YAPP. (Stmts. at 5).

Odom testified that he told Plaintiff there were open positions at YAPP. (Odom Dep. at 9-10). Odom testified that he did not know if jobs were available for material handlers. But he believed they were hiring because "a lot of people" were not coming back to work after COVID and "it was known around the entire plant" that YAPP was "short on people" and it was hiring.

(*Id*. at 11).

Odom told Plaintiff to submit an online application, and gave him the website information to do that. (Stmts. at 8; Odom Dep. at 21).

Plaintiff testified that someone in Human Resources reached out to him and asked him to come in for an interview and a hi-lo test:

> Q. And did you respond to his Facebook post or how did you go about contacting him?
> A. I believe I called him.
> Q. And what did you say?
> A. "What's up with that hi-lo position? I'm trying to get a job."
> Q. And what did he say?
> A. He told me to go online, fill out the application, and he'll have HR pull it.
> Q. And is that what you did?
> A. Yes.
> Q. And what happened next?
> A. I got a couple texts from him and we went back and forth a couple times and he told me that the HR lady would be calling me in a minute, so I answered my phone. She called me and gave me an interview date and time.
>
> . . . .
> Q. . . . So she called you and said this is your interview date and time; is that correct?
> A. She called me and told me the interview date and time and she told me that I'll be taking – be prepared to take the hi-lo test.

(Pl.'s Dep. at 39-40).

"Screenshots" of the text exchange were produced during discovery, and appear to reflect that Odom stated "She gone [sic] give u a call her name Kim she just pulled it. Make sure you answer," and "she gone call u she was walking in a 1pm meeting but she pulled up shit bro I got u." (ECF No. 37-6). Odom testified that "Kim, the HR lady, was going to pull his application." (Odom Dep. at 21).

Defendant produced the online application that was generated. (Def.'s Ex. 7, ECF No. 37-8). That application indicates that Plaintiff applied on September 11, 2020, and that he

applied for a "Production Operator" position. (*Id.*). Nevertheless, Plaintiff testified that he applied for a "hi-lo driver position." (Pl.'s Dep. at 39).

It is undisputed that Plaintiff came to YAPP's Romulus, Michigan plant in person on September 14, 2020, and expressed interest in a job operating a hi-lo.

Odom testified that Plaintiff came into the plant with him, that he introduced him to two YAPP employees, and then did not have any other contact with him that day. (Odom Dep. at 18). Plaintiff testified that, after he arrived, the plant manager and the "safety guy" spoke with him:

> A. . . . And all I know is the plant manager and the safety guy was there together. And they asked me what position I was – I told them I was there for the hi-lo test. And immediately they, you know, looked me up and down, of course, because of my brace, started asking me safety questions, like can I get on the hi-lo and things of that nature. . .

(Pl.'s Dep. at 41).

Howard testified that Plaintiff applied for a material handling position. Howard testified that, after Plaintiff arrived at the plant, Howard "got a call on the walkie from Matt, Matthew. He was the supervisor, the shipping supervisor at the time, to go up and bring [Plaintiff] in, and give him a written test, and physical driving test" for operating a hi-lo. (*Id.* at 9). Howard testified that Plaintiff passed the written test. (*Id.*) Howard testified that Plaintiff passed the driving test for a hi-lo as well:

> Q. Did you give him a physical test?
> A. I did.
> Q. What was the physical test that you gave him?
> A. Him, riding around, stacking, unstacking, and pretty much moving product back and forth.
> Q. Did he pass that test?
> A. Yes, he did.
> Q. And let's talk about the equipment that he was on. Was he on a high-low

| | | |
|---|---|---|
| | | machine? |
| A. | | Yes, he was. |
| Q. | | What kind of high-low machine was that? |
| A. | | Just a regular propane. |
| Q. | | And did you notice that he had a disability? |
| A. | | No, no. I didn't notice it was a disability. He just, he walked like an older guy. |
| Q. | | And did you notice whether he had a crutch? |
| A. | | I didn't notice the crutch until after the fact. |
| Q. | | Got it. So were you able to observe him get on the high-low machine? |
| A. | | Yes. |
| Q. | | Was he able to do that in an acceptable way? |
| A. | | Yes. |
| Q. | | And in operating that machine, you said that he had to move the machine around, operate the forks of the machine, pick up a load, put down a load, he did all of that fine? |
| A. | | Yes. |

. . . .

Q. And the test that you had him do, Arron, tell us about the test, give us some detail about that?

. . . .

A. Okay. I'll have him pretty much inspect the high-low. First you have to know how – you don't even get on the high-low first. You want to inspect it, make sure the fluids and stuff is there, you seat belt is working. He did everything, which I was surprised. He gets on the high-low, I have him drive in front of the racks, he stops, he raises the forks, he takes off two. I forgot the name of them, it's been a while. He takes off two cages unstack the two cages, stack them back with up the two cages, drive around the facility, come back, and restack. So does that encompass the job that you were interviewing him for?

A. Yes, the exact job, yes.

(Howard Dep. at 9-12).

Howard testified that he was the only one doing the testing of Plaintiff and that neither Thomason nor Ron Yost were in the area when that testing was done. (Howard Dep. at 29-30).

Howard testified that, at YAPP, some Material Handlers operated a hi-lo and got off the machine as needed to perform other tasks, while some others just operated a hi-lo and stayed on the machine:

> Q. Was there portions of that job that were, that a person was required to get off of the high-low and go, you know, stack things, and do other things that were physical in nature?
> A. No. Because the position he was applying for front long wheel base pickup. So all he was doing was picking up and dropping off.
> Q. Was there a job description for front wheel base pickup, did I say that right, wheel base pick up?
> A. Yes. No job description.
> Q. And can you tell me what that job entailed?
> A. Yes. He sits at the front of the line, and pretty much waits until the line leader of line calls rack, you know, pickup. And nine times out of ten, they don't even have to call you because you're sitting right there. So you can't really miss the rack being picked up., because you actually see it getting filled. So nine times out of ten, I train the high-low drivers to already have an empty rack next to the base, so all you have to do is fill it, so there's no delay. And then you go run it to the back of the dock, stack it, and go back and sit for the next rack to be available for pickup.
> Q. So in terms of his, him doing that job in a shift, there was no need for him to get off of the high-low and manipulate any materials or anything like that, did I get that right?
> A. Correct. No, no, because we, we'll have two to three guys in the back that are doing more of the labor position, the more of the material handler role, stacking gas tanks to the line, cutting boxes. But his role, only rack base pickup.
> Q. And were there positions in the plant where high-low operators needed to get off the high-low and do something with materials.
> A. Yes.
> Q. And was that, that was not the job that he was applying for?
> A. No. We normally, normally we will keep younger guys back there, because it's more of a physical, it's a physical job. Because you're cutting, you have got to be really, really fast to keep up, because there's a lot going on. But we'll normally keep two to three guys back there. But his job, he's only driving.

(Howard Dep. at 12-13). Howard understood that Plaintiff was seeking to get hired doing the latter (ie., just driving a hi-lo). (*Id.*). Howard also testified that YAPP had several disabled employees who were Material Handlers that just operated a hi-lo. (*Id*. at 17-18).

Like Howard, Plaintiff also testified that Plaintiff passed the written and physical test on the hi-lo that was given to him at Yapp. Plaintiff testified that Howard told him he "passed with

9

flying colors and that he had a position – this is the hi-lo supervisor, he told me that he had a position for me where I didn't have to get out of my hi-lo at all and he basically told me I was good." (Pl.'s Dep. at 44-45).

After that, however, the plant manager told Plaintiff "it was a safety issue and that he couldn't hire me because of my leg," to which Plaintiff responded by reiterating, "Well, I have no restrictions when it comes to the hi-lo." (Pl.'s Dep. at 43). Plaintiff testified that the plant manager nevertheless informed him he was not being hired:

> Q. Who told you, who informed you that you didn't get the job?
> A. The plant manager.
> Q. And what exactly did the plant manager say?
> A. I'm not going to say exactly what he said, but he basically told me that he believed that it was a safety issue with me getting on and off the hi-lo because of my brace and he couldn't hire me.
> Q. Okay. Did you request any accommodation?
> A. No.
> Q. Were you offered a different position while you were there?
> A. No.

(Pl.'s Dep. at 47-48).

Plaintiff filed a charge with the EEOC based on disability on December 16, 2020. (Am. Compl. at ¶ 10). The EEOC gave Plaintiff a Right to Sue letter on December 5, 2022. (Am. Compl. at ¶ 11).

## STANDARD OF DECISION

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986). In reviewing Defendants' summary judgment motion, this Court must view all facts and inferences in the light most favorable to Plaintiff, the nonmoving party. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). The Court is not permitted to make credibility assessments. *Anderson,* 477 U.S. at 255.

Under Fed. R. Civ. P. 56(f), the Court has the authority to grant summary judgment independent of the motion. Under that subsection, "[a]fter giving notice and a reasonable time to respond, the court may:" 1) grant summary judgment for a nonmovant; 2) grant the motion on grounds not raised by a party; or 3) "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f).

## ANALYSIS

Plaintiff asserts that he is disabled within the meaning of the ADA and the PWDCRA, and that Defendant violated the statutes by failing to accommodate him. Michigan's PWDCRA substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally resolve the PWDCRA claim. *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012). As such, both parties have addressed the claims under the ADA, rather than making separate arguments under each statute.

### I.   Failure To Accommodate Claim

Plaintiff claims that Defendant failed to accommodate his disability. Such "claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination." *Bearhart v. E. I. Du Pont de Nemours and Co.*, 833 F. App'x 416, 422 (6th Cir. 2020); *Fisher v. Nissan North Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020).

Under this direct-evidence framework, the plaintiff has the initial burden of establishing: 1) that he is disabled, and 2) that he is "otherwise qualified" for the position despite his or her disability: a) without accommodation from the employer; b) with an alleged 'essential' job requirement eliminated; or c) with a proposed reasonable accommodation. *Fisher*, 951 F.3d at 417. The "burden of making out a *prima facie* case is not an onerous one." *Blanchet v. Charter Communications, LLC*, 27 F.4th 1221, 1228 (6th Cir. 2022) (citation omitted)

If the plaintiff establishes those elements, then the burden shifts to the defendant to prove that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose undue hardship upon the employer. *Kleiber v. Honda Am. Mfg.*, Inc., 485 F.3d 862, 869 (6th Cir. 2007).

Before going further, the Court will address a threshold challenge by Defendant that can be disposed of fairly quickly.

### A. Is Plaintiff's Claim Barred Because No Material Handler Position Was Open At YAPP?

Defendant asserts that Plaintiff's failure-to-accommodate claim is barred because YAPP did not have an open Materials Handler position in September of 2020. (Def.'s Br. at 18). In support of this challenge, Defendant directs the Court to deposition testimony of its own employees, that no Material Handler positions were open at the time Plaintiff sought employment.

But the Court must construe the evidence *in the light most favorable to Plaintiff*. Doing that, Plaintiff has presented sufficient evidence to create an issue of fact as to whether YAPP had an open Material Handler position open at the time in question. That evidence includes Plaintiff's testimony that Odom posted on facebook that YAPP was hiring hi-lo drivers, and

Plaintiff's testimony that a woman from HR at YAPP called him and asked him to come in for an interview and to be prepared for hi-lo testing during that interview.

Thus, the Court rejects this challenge and proceeds to analyze whether Plaintiff has established a prima facie case.

### B. Can Plaintiff Establish A Prima Facie Case?

Again, a plaintiff's "burden of making out a *prima facie* case is not an onerous one.*" Blanchet,* 27 F.4th at 1228.

For purposes of summary judgment, the parties do not dispute that Plaintiff is disabled. Thus, the analysis proceeds to the second element of the prima facie case, that can be met in three different ways.

"Failure-to-accommodate cases typically fall into two broad categories: (1) case where the plaintiff does not want an accommodation but instead makes 'the straightforward claim' that he can do the job 'as it exists'; and (2) 'those in which the plaintiff challenges a particular job requirement as unessential or claims that he or she can do the job with reasonable accommodations on the part of the employer.'" *Cooper v. Dolgencorp, LLC*, 93 F.4th 360, 369 (6th Cir. 2024) (citation omitted).

Here, however, Plaintiff makes both arguments in opposing the pending motion. Plaintiff need only prevail on one in order to survive summary judgment and proceed to trial.

#### 1. Was Plaintiff Otherwise Qualified For The Material Handler Position Without An Accommodation?

In responding to the motion, Plaintiff asserts that there is an issue of fact as to whether he could perform the Material Handler position without an accommodation. (*See* Pl.'s Br. at 10). In support of his position, Plaintiff states that he "presented a job from his treater that indicates

13

he could do the job without an accommodation." (*Id*.). The letter from Plaintiff's treater, however, states that Plaintiff can "drive and operate machinery" without restriction. (*See* Pl.'s Ex. 9).

The Material Handler position includes more than just driving a hi-lo or operating other machinery. The Job Description for a Material Handler includes, among the essential functions of the job, performing "physical tasks to transport or store materials within the production area." (Def.'s Ex. 13, ECF No. 37-14). It includes, among the "Physical Demands" of the position, that the "employee must occasionally lift and/or move up to 50 pounds." (*Id.*). Plaintiff himself testified that he can stand for limited time periods only 10 or 20 minutes without a problem, and can lift ten pounds. (*Id*. at 13-14).

For purposes of the pending motion, Plaintiff has not submitted sufficient evidence to create an issue of fact as to whether he can perform the Material Handler position with Yapp without an accommodation.

2. **Was Plaintiff Otherwise Qualified For The Position With A Proposed Accommodation?**

Another way of meeting the second element of a prima facie case is by the plaintiff establishing that he was qualified for the position "with a proposed accommodation." *Fisher*, 951 F.3d at 417.

Plaintiff contends that he sought a Material Handler position with YAPP. In order to meet this element, he must show that he could perform that position with a proposed accommodation.

14

Under the ADA, Plaintiff bears the burden of proposing an accommodation and showing that the proposed accommodation is objectively reasonable. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008).

### i. Did Plaintiff Propose An Accommodation?

Here, the parties disagree as to whether Plaintiff requested a reasonable accommodation during his interview at YAPP. Defendant directs the Court to Plaintiff's deposition testimony, wherein Plaintiff testified that he did not request an accommodation. Plaintiff, on the other hand, directs the Court to other evidence that he believes creates an issue of fact as whether he requested an accommodation be made for him (ie., that he be hired as Material Handler who just operates a hi-lo).

The Sixth Circuit has explained that "[t]here is no bright-line rule for determining whether an employee requested an accommodation." *Yanick v. The Kroger Co. of Michigan*, 2024 WL 1856690 at *4 (6th Cir. April 29, 2024) (citing *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 307 (6th Cir. 2016)). An individual "need not use words like 'accommodation' or 'disability.'" *Id.* Rather, the Sixth Circuit more generally assesses whether the individual "communicated a need for an adjustment at work because of a disability." *Yanick, supra* (citations omitted). And in "performing that assessment, context matters." *Id.*

In *Yanick*, the district court granted summary judgment in favor of the defendant as to a failure-to-accommodate claim because the district court concluded the plaintiff did not request an accommodation. The Sixth Circuit reversed. It concluded that the plaintiff raised a triable issue as to whether she requested an accommodation, based upon her actions and statements, viewed in the appropriate context. The plaintiff never came out and requested an

15

"accommodation." But after returning back to work after surgery for breast cancer, she said she "needed some time to get back to normal," said that she "was struggling," and added that she had worked 53 hours the week before and wanted the chance "to get used to all the work again." *Yanick, supra*, at *4. The Sixth Circuit concluded those comments, considered in context, would allow a reasonable jury to conclude that the plaintiff requested an adjusted work schedule.

Here too, context matters. Plaintiff entered YAPP's plant wearing an obvious external brace on his leg and expressed that he wanted a job driving a hi-lo. When representatives from YAPP expressed concerns about Plaintiff being able to operate a hi-lo, Plaintiff gave them a letter from his treater stating that he could operate a hi-lo without restrictions. Howard testified that YAPP had some Material Handlers who strictly operated a hi-lo and that he understood that was the job Plaintiff was seeking at YAPP. Plaintiff testified that, after he passed the hi-lo tests, Howard told him that he passed the tests "with flying colors" and that he had a position for Plaintiff wherein he could stay in the hi-lo, rather than getting in and out of it throughout the day.

After that, however, the plant manager told Plaintiff "it was a safety issue and that he couldn't hire me because of my leg," to which Plaintiff responded by reiterating, "Well, I have no restrictions when it comes to the hi-lo." (Pl.'s Dep. at 43).

Thus, while Plaintiff did not use the word "accommodation," for purposes of his ADA claim, a reasonable jury could conclude that Plaintiff requested that YAPP accommodate his disability by allowing him to work as Material Handler who performed only hi-lo operation work.

Michigan's PWDCRA, however, differs from the ADA in that it expressly requires a request for an accommodation to be made in writing. Mich. Comp. Laws § 37.1210(8); *see also*

*Hodnett v. Chardam Gear Co., Inc.,* 749 F. App'x 390, 396 n.2 (6th Cir. 2018) (Explaining that unlike the ADA, the PWDCRA requires a request for accommodation to be in writing). The Court, therefore, had the parties address this issue in supplemental briefs.

In his supplemental brief, Plaintiff contends that his "to whom it may concern" letter from his physical therapist stating that he can drive and operate machinery without limitations (ECF No. 38-10) somehow satisfies the PWDCRA's requirement that Plaintiff request an accommodation from Yapp in writing. (*See* ECF No. 43 at PageID.1342-43). The Court disagrees. Accordingly, the Court shall grant summary judgment in favor of Defendant as to Plaintiff's failure-to-accommodate claim under Michigan's PWDCRA.

### ii Can Plaintiff Safely Operate a Hi-Lo?

Defendant's motion asserts that, even if hi-lo operation was the sole function of the Material Handler position, Plaintiff cannot be deemed qualified because he could not safely perform that job function. (Def.'s Br. at 12). This argument is based upon the testimony of YAPP employees Thomason and Yost, who concluded that Plaintiff could not safely operate a hi-lo, based upon their observations.

In evaluating this motion, however, the Court must construe the evidence in the light most favorable to Plaintiff. Howard testified that his job included testing and hiring of Material Handlers, that he performed the written and hands-on hi-lo testing of Plaintiff, and that Plaintiff passed both tests. Howard also testified that Thomason and Yost were not even in the area when Howard tested Plaintiff. As such, the Court rejects this argument and concludes that Plaintiff has created an issue of fact as to whether he can establish a prima facie failure-to-accommodate claim under the ADA.

### C. Would Elimination Of All Other Essential Functions Be Unreasonable?

Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to prove that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose undue hardship upon the employer. *Kleiber v. Honda Am. Mfg.*, Inc., 485 F.3d 862, 869 (6th Cir. 2007).

A "reasonable accommodation" may include "job restructuring," 42 USC 12111(9)(B), but "it does not include removing an 'essential function' form the position, for that is per se unreasonable." *E.E.O.C. v. Ford Motor Co.,* 782 F.3d 753, 761 (6th Cir. 2015). Whether a job function is essential is a question of fact that is typically not suitable for resolution on a motion for summary judgment. *Keith v. County of Oakland*, 703 F.3d 918, 926 (6th Cir. 2013)

Without discussing any of the other functions of the position, Defendant's motion argues that to have a Material Handler position that is confined to operation of a hi-lo would be unreasonable and pose an undue hardship for it. (Def.'s Br. at 16-18).

Yet Howard testified that YAPP had already been doing just that – having disabled persons perform Material Handler positions that involved just hi-lo driving. (Howard Dep. at 17-18). Accordingly, the Court rejects this challenge, as there are issues of fact for trial.

### D. Is Plaintiff's Failure-To-Accommodate Claim Barred By Defendant Having Offered Plaintiff A Production Operator Position?

Defendant's motion further asserts that Plaintiff's failure-to-accommodate claim is barred because YAPP offered Plaintiff an accommodation – an open Production Operator position. (Def.'s Br. at 19). This challenge is based upon Thomason's testimony that he offered Plaintiff a job at YAPP as a Production Operator on the floor. (Thomason Dep. at 23, 24 & 35).

Again, in evaluating this summary judgment motion the Court must construe the

evidence in the light most favorable to Plaintiff, the non-moving party. Plaintiff testified that he was not offered a different position at YAPP after he was told he was not being hired as a Material Handler. (Pl.'s Dep. at 47-48). Thus, the Court rejects this challenge.

## CONCLUSION & ORDER

For the reasons set forth above, Defendant's summary judgment motion IS GRANTED IN PART. The Court GRANTS summary judgment in favor of Defendant as to Plaintiff's failure-to-accommodate claim under Michigan's PWDCRA because Plaintiff did not request an accommodation in writing, as that act expressly requires. The Court DENIES Defendant's challenges to Plaintiff's failure-to-accommodate claim under the ADA.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: August 29, 2024